(Lucas County Common Pleas.)

WILLIAM W. CARGILL and SAMUEL D. CARGILL, Partners doing business under the firm name of CARGILL COMMISSION COMPANY v. THE TOLEDO LINSEED OIL COMPANY.

A sale alleged to have been made by one party to another of a certain quantity of flax seed—Suit brought against the purchaser by another not a party to the contract of sale claiming damages for its breach on the following allegation as to the contract, "that said flax should be paid for by the defendant by permitting the plaintiffs to draw a draft on the defendant": Held that such allegation not sufficient to sustain a cause of action in favor of such plaintiffs for the reasons:

(1). It does not show an original contract on the part of the defendant creat-

ing any obligation to such plaintiffs enforceable in their own right.

(2). It does not show any novation by which such obligation was thereafter assumed.

(3). There is no allegation of an assignment.

(4). In such case the obligation, if any, would be to the original party, and defendant could not be liable at the same time to another.

———

PRATT, J.

The petition in his case—to state it very briefly—alleges the sale by plaintiffs to The National Linseed Oil Company of a certain quantity of flaxseed at a certain price, possession to be retained by the plaintiffs until paid for by defendant. That plaintiffs had it in their possession (and I will, for convenience, here designate the parties as "The National Company" and "The Toledo Company"); that the National Company thereby became indebted to the plaintiffs in a certain sum named, they holding the seed as collateral security, the National Company having the right, as alleged, to sell the seed at not less than the amount of the indebtedness; that the National Company did thereafter sell the same to defendant The Toledo Company, for the same price as that from the plaintiffs to the National Company; and then follows this allegation.

"It was provided by said contract of sale to defendant"—and that would be The Toledo Linseed Oil Company —"that said flax seed should be paid for by defendant to plaintiffs by permitting plaintiffs to draw a draft upon defendant with the bill of lading attached, and which said draft was to be paid at the time of the delivery of said flax seed, and which delivery was by the terms of said agreement to be made within the month of July, 1898, as directed by defendant."

This is the only allegation of the petition, so far as it relates to the contract between the National Company and The Toledo Company, in reference to any connection of the plaintiffs with the sale or with the Toledo Company, the defendant. There is no allegation even of any knowledge having been communicated to the defendant —The Toledo Company—of the alleged contract between plaintiff and The National Company, nor as to the terms of any contract, if any such there was, or of any interest of the Cargills in the seed, or any limitation of the right of The National Company to make a sale of the seed; no allegation that The Toledo Company knew of any debt of The National Company to the plaintiffs. Although the allegation, does not specifically state that defendant was to pay The National Company for the seed, by the acceptance and payment of a draft to the plaintiffs, yet such is the plain purport, as I construe it, of the allegation that the seed was to be paid for by defendant, &c, as I have read.

Upon these allegations as to contract, the petition proceeds to state the shipment of a portion of the seed to Toledo, the drawing of a draft, &c, and the refusal of the defendant— The Toledo Company—to receive the seed or pay the draft. It alleges readiness on the part of plaintiffs to ship the remainder; alleges that they made requests upon defendant for orders designating or directing the shipment, and then goes on to allege a sale as having been made by the plaintiffs of the whole seed — that which had been shipped to Toledo and that which was not shipped to Toledo —at a certain price, less by a number of cents per bushel than the sale by the plaintiffs—the Cargills—to The National Company, and by The National Company to defendant, and asks judgment for damages for the difference between these prices, together with freight, insurance and various and sundry other charges. The prayer of the petition designates these charges, and I do not need to stop to read them, they covering, not only the difference between the prices—in which there seems to have been what is ordinarily called a "slump"—marine insurance and charges, &c.

This case was argued orally upon demurrer, also in an exhaustive brief on the part of demurrant—the defendant; but it does not seem to me necessary, to go over the whole ground of the argument or the whole

discussion that was had before me, but simply to strike at what seems to me to be the vital question presented on this demurrer.

There is an entire lack of any notice to The Toledo Company of the alleged contract between the plaintiffs and The National Company, or of the existence of any debt of that company to the plaintiffs. I repeat that, because that is the vital point, as it seems to me, that is before me for hearing — a lack of notice that the plaintiffs had or claimed to have any interest in the property in their own right by the way of security or otherwise. Plaintiffs allege their business to be, in part at least, that of commission merchants; and the fact that they were in possession of the seed, gave no notice to the purchasers that they had any other interest in it than a claim for storage or commission, which might raise a presumption that the grain would go through their hands as agents and enable them to claim their commissions and charges. No greater right—and I mean by that no higher right — would be conferred by such a draft than if it had been one for payment on a bank draft or the deposit of the money in a bank.

That an action may be maintained by a third party upon a contract between two parties made for the benefit of a third party, the consideration passing between the two, is undoubted. It might be done before the code, and it can be done in jurisdictions where there is no code. The difference is one not of right, but only in the form of procedure. Before the code, the action would have been in the name of the promisee, for the use of the beneficiary. This form, however, is done away with by the code under our practice. Now, upon this question, a large number of authorities are cited — upon the question as to when an action may be maintained by the party for whose benefit it is made. I only deem it necessary here to refer to the case of Emmitt v. Brophy, 42 Ohio St., 82, to the opinion of Owen, J., which was delivered in that case, and his citation of authorities and comments upon the cases, to show the principles upon which such an action must be based.

The syllabus states enough of the facts in that case to show its application here:

1. "An agreement made on a valid consideration by one person with another to pay money to a third, can be enforced by the latter in his own name; and the facts that the instrument evidencing such agreement is under seal, and that such third person is not named therein, do not affect the right to enforce it."

Of course, the seal part has nothing to do with the question.

"2. Where a bridge company, owning a toll bridge, sells it, under authority of law, to the commissioners of a county, for a consideration, in money, paid to a controlling stockholder of the company, who, to induce, and as part consideration of the purchase, gives his bond for the use and benefit of the county, conditioned — and now comes the important part —conditioned, among other things, to pay off all liens and debts, whether in judgment or otherwise, existing against said bridge, judgment creditors of the company, who had an execution lien upon the bridge at the date of the bond, may recover the amount of their judgment thereon against the obligor."

Now, on page 88, Judge Owen, delivering the opinion of the court, says:

"These facts are strongly suggestive that it entered into the contemplation of the parties to this bond—(he had been reciting the facts, which I do not need to recite)—at the time of its execution, that this particular lien of the plaintiffs upon the bridge was to be discharged by Emmitt. Its existence was known to them, and they seem to have left nothing to conjecture. Indeed, if Brophy and Potter had been expressly named as the lien-holders, it is difficult to see how this would have added to the definiteness of the bond, or made more certain the intention of the parties. This seems to be a conclusive answer to the suggestion that there is a want of privity between the immediate parties to the bond and the

plaintiffs, which is chiefly relied upon by Emmitt as a defense. It is settled in this state that an agreement made on a valid consideration by on person with another, to pay money to a third, can be enforced by the latter in his own name."

He then cites the case of Crumbaugh v. Kugler, 3 Ohio S., 549; Bagaley v. Waters, 7 Ohio St., 367; Trimble v. Strother, 25 Ohio St., 381; and Thompson v. Thompson, 4 Ohio St., 333, which I do not need to refer to here, as he refers to them and states their principles.

The petition which we have before us in this case, in the absence of the allegations to which I have referred, is, in my judgment, insufficient, under the principles stated in this 42 Ohio St., which, of course, we are not to question at all as it is the decision of the Supreme Court.

Again, remedy is made by the code provision in reference to an assignment of a chose in action. Before the code it would have been in the name of the original holder, for use of the assignee; now, directly in the name of the assignee. But here, in this case, no assignment is alleged. In short, as to this petition as it now stands, it seems to me that there is here:

1. Neither an allegation nor a statement—a sufficient one—of any original contract creating any obligation on the part of defendant to these plaintiffs and enforcible in their own right as an original obligation.

2. There is no charge whatever in the petition of any novation by which such an obligation was thereafter assumed by the defendant. And

3. There is no allegation of any assignment.

Again, and further as to this action here, it is not brought by the plaintiffs to recover the purchase price of the seed sold; it is brought to recover damages for failure of the defendant to perform its contract with The National Company. These damages as claimed here are made up of depreciation of the price or value of the property shipped and tendered; in failure to order shipment of the remainder, and in charges as stated in the prayer of the petition—they are charges for marine insurance, for loading, for storage, &c, no matter what, they are general charges for damages, and it seems to me that the considerations already stated apply to an action by the plaintiff upon any such claim by the plaintiff, or any other party other than The National Milling Company. If the defendant is liable in this case on the alleged contract for any part of the alleged damages claimed — and as to this I give no opinion, because it is not before me, whether there is such liability in any form to anybody — but, if there is, it is by reason of anything that is here alleged, a liability to The National Milling Company, and the defendant certainly connot be held liable to both The National and The Toledo Companies at the same time and what I hold here and now simply is, that there is nothing whatever here sufficient to show, in either the original contract or now, a right in the plaintiffs here to bring an action upon this original contract against the defendant. For this reason the demurrer will be sustained.

Plaintiffs asked to have exception noted; also to have thirty days in which to amend petition.

Defendant's counsel not objecting, granted.

King & Tracy, for Plaintiffs.
T. W. Wheeler, for Defendant.